FILED
2017 Mar-21  PM 04:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EMPLOYERS MUTUAL CASUALTY COMPANY, an insurance company Incorporated in the State of Iowa; | ) ) ) | |
| | ) | CIVIL ACTION NUMBER |
| Plaintiff, | ) | |
| | ) | |
| v | ) | |
| | ) | |
| JEFF HUFF, HIGHLINE IMPORTS, INC., And RAMI ACHDUT. | ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

### PARTIES AND JURISDICTIONAL ALLEGATIONS

1.     Plaintiff Employers Mutual Casualty Company ("EMC") is an insurance company incorporated and organized under the laws of the State of Iowa, having its principal place of business in the State of Iowa.

2.     Defendant, Jeff Huff (hereinafter "Huff"), is an individual resident of the State of Alabama and is over the age of nineteen (19) years.  Huff is a plaintiff in an underlying action defined further *infra*.

3.     Defendant Highline Imports, Inc. (hereinafter "Highline") is an Alabama Corporation with its principal place of business in Jefferson County,

Alabama and doing business in Alabama and specifically in Jefferson County at all times material to this matter.  Highline is a Defendant in an underlying action defined further *infra*.

4.      Defendant, Rami Achdut (hereinafter "Achdut"), is an individual resident of the State of Alabama and is over the age of nineteen (19) years.  Achdut is a defendant in an underlying action defined further *infra*.

5.      Huff, Highline and Achdut are parties in an underlying state court action filed on or about August 12, 2015 in the Circuit Court of Jefferson County, Alabama docket number CV-2015-903124 styled *Jeff Huff v. Highline Imports, Inc., et al* (hereinafter "the underlying action") (Complaint and Amended Complaint filed in the underlying action attached hereto as Exhibit 1).

6.      The underlying action alleges, *inter alia*, breach of contract, deceit and fraud actions arising out of an alleged written contract for employment entered between Huff and Highline and Achdut.

7.      The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.00.  Huff alleges that the contract provided a base salary of $15,000 for the months of February 2014 through June 2014 and 30% commission of internet sales and 10% commission of dealership sales. (Underlying Complaint, para. 8, Amended Complaint para 3, Exhibit 1).  In addition, plaintiff alleges he was to

receive a company car with insurance and a laptop computer (Underlying Complaint, para. 8. Exhibit 1).

8.      This declaratory judgment action concerns the underlying action wherein damages are sought for alleged breach of the employment contract, deceit and fraud.  Moreover, Highline and Achdut each separately seek defense and indemnity from EMC for the claims alleged against them in the underlying action.

9.      Although the underlying complaint does not contain an ad damnum clause, the nature of the claims and allegations of damages, demonstrate that Huff is seeking more than $75,000.00 against the Highline and Achdut.  Moreover, EMC is providing a separate defense to both Highline and Achdut pursuant to a strict reservation of rights and the defense costs of the underlying action are appropriate in determining the amount in controversy in a declaratory judgment action such as this.  *St. Paul Reinsurance Co., Ltd. v. Greenburg,* 134 F.3d 1250 (5th Cir. 1998); *See also* 14B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 3702 (3d ed. 1998)(approving inclusion of value of defense in amount in controversy between insurer and insured, citing *Stonewall Ins. Co. v. Lopez,* 544 F.2d 198 (5th Cir. 1976)).  As such, jurisdiction is predicated on diversity of citizenship and the amount in controversy, 28 U.S.C. §1332 and on the Federal Declaratory Judgment Act, 28 U.S.C. §2201.

10.    Venue is proper in this court pursuant to 28 U.S.C. §1391 as the underlying action is pending in Jefferson County, Alabama Circuit Court which is situated within the district and divisional boundaries of the Northern District of Alabama.

## UNDERLYING LAWSUIT

11.    In the underlying action, Huff alleges that Highline and Achdut breached the contract by failing to adhere to and comply with the terms and conditions specified therein.  (Underlying Complaint, para. 10, Exhibit 1).

12.    Huff asserts the following causes of action against the builder: (1) Breach of Contract; (2) Fraud, Misrepresentation and Deceit; (Underlying Complaint, Exhibit 1) and (3) Promissory Fraud.  (Amended Complaint, Exhibit 1)

13.    Huff alleges that he suffered and will continue to suffer lost income and other benefits.   (Underlying Complaint, para. 11, Exhibit 1).   Huff seeks compensatory and punitive damages.  (Underlying Complaint, Exhibit 1).

## POLICIES

14.    Plaintiff EMC issued Commercial General Liability Policy Number 4D7-28-24 to Highline Imports, Inc. with effective policy dates of March 1, 2013 to March 1, 2014 and renewed thereafter to March 1, 2015. ("The CGL Policy").  A true and correct copy of the CGL Policy is attached to this Complaint as Exhibit 2

and the provisions of the CGL Policy are adopted and incorporated herein by reference.

15.    Plaintiff EMC issued Commercial Auto-Garage Policy **N**umber 4E7-28-24 to Highline Imports, Inc. with effective policy dates of March 1, 2013 to March 1, 2014 and renewed thereafter to March 1, 2015. ("Auto-Garage Policy"). A true and correct copy of the Auto-Garage Policy is attached to this Complaint as Exhibit 3 and the provisions of the Auto-Garage Policy are adopted and incorporated herein by reference.

16.    Plaintiff EMC issued Umbrella General Liability Policy **N**umber 4J7-28-24 to Highline Imports, Inc. with effective policy dates of March 1, 2013 to March 1, 2014 and renewed thereafter to March 1, 2015.  ("Umbrella Policy").  A true and correct copy of the Umbrella Policy is attached to this Complaint as Exhibit 4 and the provisions of the Umbrella Policy are adopted and incorporated herein by reference.

## Commercial General Liability Policy

17.    The CGL Policy provides that EMC "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies…."

18.    The CGL Policy further provides that the insurance applies to "bodily

5

injury" and "property damage" only if the "bodily injury" or "property damage" is

caused by an "occurrence".  The CGL Policy defines these terms as follows:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

> "Property damage" means:
>> a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>> b.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>> For the purposes of this insurance, electronic data is not tangible property.
>> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy diskes, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

19.    The CGL Policy further provides that the insurance applies to an insured and defines an insured as follows:
> 1.    If you are designated in the Declarations as:
>> d.    An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

20.    The CGL Policy contains an endorsement entitled Absolute Exclusion

for Fraud, Misrepresentation, Deceit or Suppression or Concealment of Fact which

provides as follows:

> This insurance does not apply to any claim or lawsuit for damages
> arising out of fraud, misrepresentation, deceit, suppression or
> concealment of fact, whether intentional, unintentional, innocent,
> negligent, willful, malicious, reckless or wanton, including, but not
> limited to an action or lawsuit demanding or seeking damages or
> recover based on direct liability, vicarious liability or agency principles.
> We will not make any payment if those payments arise out of any claim
> or lawsuit excluded by this endorsement.  We have no duty to defend
> any insured against any claim or lawsuit for damages to which this
> insurance does not apply.

> This exclusion applies regardless of:
> 1. Whether such operations are or were conducted by you or on your
> behalf; or
> 2. Whether the operations are or were conducted for you or for others.

21.     The CGL Policy contains an endorsement for employment-related

practices exclusion which provides that the coverage does not apply to "bodily

injury," and/or "personal and advertising injury" to:

> (1)     A person arising out of any;
>> (a)     Refusal to employ that person;
>> (b)     Termination of that person's employment; or
>> (c)     Employment-related practices, policies, acts or omissions, such
>>          as coercion, demotion, evaluation, reassignment, discipline,
>>          defamation, harassment, humiliation or discrimination directed
>>          at that person; or
> (2)     The spouse, child parent, brother or sister of that person as a
>          consequence of "bodily injury" or "personal injury" to that person at
>          whom any of the employment-related practices described in paragraphs
>          (a), (b) or (c) above is directed.
> This exclusion applies:

7

(1)     Whether the injury-causing event described in Paragraph (a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(2)     Whether the insured may be liable as an employer or in any other capacity; and

(3)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

22.     The CGL Policy excludes "Bodily injury" to:

(1)     An "employee" of the insured arising out of and in the course of:

(A)     Employment by the insured; or

(B)     Performing duties related to the conduct of the insured's business;

This exclusion applies:

(A)     Whether the insured may be liable as an employer or in any other capacity; and

(B)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

23.     The CGL Policy does not apply to: "bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

24.     The CGL policy excludes "bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1)     That the insured would have in the absence of the contract or agreement; or

(2)     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney

fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury or property damage", provided:

(a)    Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)    Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

25.    This CGL Policy also contains an exclusion for garage operations which provides as follows:

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" covered under the garage policy shown in the schedule arising out of "Garage Operations."

In the endorsement "Garage Operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads of other accesses that adjoin these locations.  "Garage Operations" also include operations necessary or incidental to a garage business.

26.    The CGL Policy requires notice as soon as practicable of an "occurrence" or an offense which may result in a claim.

27.    The CGL Policy requires written notice as soon as practicable if a claim is made or "suit" is brought.

28.    EMC owes no duty to defend and/or indemnify Highline and/or Achdut under the CGL Policy of insurance with respect to the allegations in the underlying action for one or more of the following reasons:

    a.    EMC's insuring agreement has not been triggered;

    b.    The claims asserted against Highline and/or Achdut do not allege "bodily injury" as it is defined in the CGL Policy and required by the Insuring Agreement of EMC's CGL Policy;

    c.    The claims asserted against Highline and/or Achdut do not allege "property damage" as it is defined in the CGL Policy and required by the Insuring Agreement of EMC's CGL Policy;

    d.    The claims asserted against the Highline and/or Achdut do not allege an "occurrence" as it is defined in the CGL Policy and required by the Insuring Agreement of EMC's CGL Policy;

    e.    The claims asserted against the Highline and/or Achdut do not allege "bodily injury" and/or "property damage" caused by an "occurrence" as the terms are defined in the CGL Policy and required by the Insuring Agreement of EMC's CGL Policy;

    f.    The following exclusions contained in EMC's CGL Policy apply to preclude coverage for Highline and/or Achdut in the underlying

action, in whole or in part: (1) absolute exclusion for fraud, misrepresentation, deceit or suppression or concealment of fact; (2) employment related practices exclusion; (3) employer's liability; (4) expected or intended injury; (5) contractual liability; and (6) all other policy exclusions;

g.   Notice of the claim was not timely;

h.   Notice of the suit was not timely;

i.   Achdut does not qualify as an insured as defined in the CGL Policy and required by the Insuring Agreement of EMC's CGL Policy;

j.   EMC's CGL Policy further contains a deductible liability insurance provision which EMC reserves the right to enforce same; and

k.   All other policy provisions, exclusions and conditions.

29.   Because application of the pertinent portions, terms, provisions, exclusions, conditions, etc., under EMC's CGL policy preclude coverage for Highline and Achdut in the underlying action, EMC owes no duty to defend or indemnify them for any judgment, consent or otherwise, that might be rendered against them, for some or all of Huff's allegations in the underlying action, for each and every reason stated above.

## Commercial Auto-Garage Policy

30.     The Auto-Garage Policy provides that EMC "will pay those sums that the insured legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies…."

31.     The Auto-Garage Policy further provides that the insurance applies to "bodily injury" and "property damage" only if the "bodily injury" or "property damage" is caused by an accident and resulting from garage operations other than the ownership, maintenance or use of covered "autos".  The Auto-Garage Policy defines these terms as follows:

> "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

> "Property damage" means damage to or loss of use of tangible property.

> "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

32.     The Auto-Garage Policy further provides that the insurance applies to an insured and defines an insured as follows:

     a.     The following are "insureds" for covered "autos":
          (1)     You for any covered "auto". . . .
          (3)     Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.
     b.     The following are "insured" for "garage operations" other than covered "autos":
          (1)     You.
          (2)     Your partners (if you are a partnership), members (if you are a limited liability company), "employees", directors or shareholders but only while acting within the scope of

their duties.

33.     The Auto-Garage Policy describes <u>any</u> "auto" (identified in the declaration page as symbol 21) as a covered auto for liability coverage.  "Auto" is defined as a land motor vehicle, trailer or semitrailer.

34.     The Auto-Garage Policy does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the "insured".  But for "garage operations" other than covered "autos" this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

35.     The Auto-Garage Policy excludes:

Liability assumed under any contract or agreement. But this exclusion does not apply to liability for damages:
A.     Assumed in a contract or agreement that is an "insured contract" provide the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or
B.     That the "insured" would have in the absence of the contract or agreement.

36.     The Auto-Garage Policy contains an exclusion for Employee Indemnification and Employer's Liability which precludes:

"Bodily injury" to:
a.     An "employee" of the "insured" arising out of and in the course of:
    (1)     Employment by the "insured"; or
    (2)     Performing duties related to the conduct of the insured's business; or
b.     The spouse, child, parent, brother or sister of the "employee" as a consequence of Paragraph a. above.
c.     A person arising out of any;
    (1)     Refusal to employ that person;

(2)     Termination of that person's employment; or

(3)     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

d.      The spouse, child parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1)     Whether the insured may be liable as an employer or in any other capacity; and

(2)     To any obligation to share damages with or repay someone else who must pay damages because of the injury. …

37.     The Auto-Garage Policy requires prompt notice of a claim or suit.

38.     The Auto-Garage Policy requires prompt written notice if a claim is made or "suit" is brought.

39.     EMC owes no duty to defend and/or indemnify Highline and/or Achdut under the Auto-Garage Policy of insurance with respect to the allegations in the underlying action for one or more of the following reasons:

a.      EMC's insuring agreement has not been triggered;

b.      The claims asserted against Highline and/or Achdut do not allege "bodily injury" as it is defined in the Auto-Garage Policy and required by the Insuring Agreement of EMC's Auto-Garage Policy;

c.    The claims asserted against Highline and/or Achdut do not allege "property damage" as it is defined in the Auto-Garage Policy and required by the Insuring Agreement of EMC's Auto-Garage Policy;

d.    The claims asserted against the Highline and/or Achdut do not allege an accident as it is defined in the Auto-Garage Policy and required by the Insuring Agreement of EMC's Auto-Garage Policy;

e.    The claims asserted against the Highline and/or Achdut do not allege "bodily injury" and/or "property damage" caused by an accident and resulting from "garage operations" as the terms are defined in the Auto-Garage Policy and required by the Insuring Agreement of EMC's Auto-Garage Policy;

f.    The following exclusions contained in EMC's Auto-Garage Policy apply to preclude coverage for Highline and/or Achdut in the underlying action, in whole or in part: (1) expected or intended injury; (2) contractual liability; (3) employee indemnification and employer liability; and (4) all other policy exclusions;

g.    Notice of the claim was not timely;

h.    Notice of the suit was not timely;

15

i.    Achdut does not qualify as an insured as defined in the Auto-Garage
Policy and required by the Insuring Agreement of EMC's Auto-
Garage Policy;

j.    EMC's Auto-Garage Policy further contains a deductible liability
insurance provision which EMC reserves the right to enforce same;
and

k.    All other policy provisions, exclusions and conditions.

40.    Because application of the pertinent portions, terms, provisions,
exclusions, conditions, etc., under EMC's Auto-Garage Policy preclude coverage
for Highline and Achdut in the underlying action, EMC owes no duty to defend or
indemnify them for any judgment, consent or otherwise, that might be rendered
against them, for some or all of Huff's allegations in the underlying action, for each
and every reason stated above.

**Umbrella Policy**

41.    The Umbrella Policy provides that EMC "will pay on behalf of the
insured the "ultimate net loss" in excess of the "retained limit" because of "bodily
injury" and/or "property damage"

42.    The Umbrella Policy further provides that the insurance applies to
"bodily injury" and "property damage" only if the "bodily injury" or "property

damage" is caused by an "occurrence".  The Umbrella Policy defines these terms as follows:

> "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

> "Bodily injury" means bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time.  "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

> "Property damage" means:
> A.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
> B.    Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.
>        . . .
> For the purposes of this insurance, electronic data is not tangible property.

> As used in this definition electronic data means information, facts or programs stores as or on, created or used on, or transmitted to or from computer software, (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

43.    The Umbrella Policy further provides that the insurance applies to an insured and defines an insured as follows:
1.    If you are designated in the Declarations as:
        4.    An organization other than a partnership, joint venture or

17

> limited liability company, you are an insured.   Your
> "executive officers" and directors are insureds, but only
> with respect to their duties as your officers or directors.
> Your stockholders are also insureds, but only with respect
> to their liability as stockholders.

44.    The Umbrella Policy contains an endorsement entitled Absolute

Exclusion for Fraud, Misrepresentation, Deceit or Suppression or Concealment of

Fact which provides as follows:

> This insurance does not apply to any claim or lawsuit for damages
> arising out of fraud, misrepresentation, deceit, suppression or
> concealment of fact, whether intentional, unintentional, innocent,
> negligent, willful, malicious, reckless or wanton, including, but not
> limited to an action or lawsuit demanding or seeking damages or
> recover based on direct liability, vicarious liability or agency principles.
> We will not make any payment if those payments arise out of any claim
> or lawsuit excluded by this endorsement.  We have no duty to defend
> any insured against any claim or lawsuit for damages to which this
> insurance does not apply.
>
> This exclusion applies regardless of:
> 1. Whether such operations are or were conducted by you or on your
> behalf; or
> 2. Whether the operations are or were conducted for you or for others.

45.    The Umbrella Policy contains an endorsement for employment-related

practices exclusion which provides that the coverage does not apply to "bodily

injury," and/or "personal and advertising injury" to:

> (1)      A person arising out of any;
>           (a)    Refusal to employ that person;
>           (b)    Termination of that person's employment; or

(c)   Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2)   The spouse, child parent, brother or sister of that person as a consequence of "bodily injury" or "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b) or (c) above is directed.

This exclusion applies whether the injury-causing event described in Paragraph (a), (b) or (c) above occurs before employment, during employment or after employment of that person. This exclusion applies whether the insured may be liable as an employer or in any other capacity; and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

46.   The Umbrella Policy excludes "Bodily injury" to:
(1)   An "employee" of the insured arising out of and in the course of:
(a)   Employment by the insured; or
(b)   Performing duties related to the conduct of the insured's business;…
This exclusion applies whether the insured may be liable as an employer or in any other capacity; and to any obligation to share damages with or repay someone else who must pay damages because of the injury….

47.   The Umbrella Policy does not apply to: "bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

48.   The Umbrella policy excludes "bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
(1)   That the insured would have in the absence of the contract or agreement; or
(2)   Assumed in a contract or agreement that is an "insured

contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury or property damage", provided:

(a)   Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)   Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

49.   The Umbrella Policy does not apply to: "bodily injury" or Property damage" due to rendering or failure to render any professional service. This includes but is not limited to: …

(14)   Liability arising out of any actual or alleged error, misstatement, misleading statement, act, omission, negligence or breach of duty by the insured or its directors and officers in the discharge of their duties, individually or collectively, or any matter claims against them solely because of their being directors and officers of the insured;

(15)   Liability arising out of the administration of any employee benefit programs;

(16)   Loss caused by any of the following which occur during the discharge of organizational duties:

(a)   Actual or alleged errors;

(b)   Misstatement or misleading statement; or

(c )   Act or omission or neglect or breach of duty by an insured.

50.   The Umbrella Policy requires notice as soon as practicable of an "occurrence" or an offense which may result in a claim.

51.    The Umbrella Policy requires written notice as soon as practicable if a claim is made or "suit" is brought.

52.    EMC owes no duty to defend and/or indemnify Highline and/or Achdut under the Umbrella Policy of insurance with respect to the allegations in the underlying action for one or more of the following reasons:

a.    EMC's insuring agreement has not been triggered;

b.    The claims asserted against Highline and/or Achdut do not allege "bodily injury" as it is defined in the Umbrella Policy and required by the Insuring Agreement of EMC's Umbrella Policy;

c.    The claims asserted against Highline and/or Achdut do not allege "property damage" as it is defined in the Umbrella Policy and required by the Insuring Agreement of EMC's Umbrella Policy;

d.    The claims asserted against the Highline and/or Achdut do not allege an "occurrence" as it is defined in the Umbrella Policy and required by the Insuring Agreement of EMC's Umbrella Policy;

e.    The claims asserted against the Highline and/or Achdut do not allege "bodily injury" and/or "property damage" caused by an "occurrence" as the terms are defined in the Umbrella Policy and required by the Insuring Agreement of EMC's Umbrella Policy;

21

f.    The following exclusions contained in EMC's Umbrella Policy apply to preclude coverage for Highline and/or Achdut in the underlying action, in whole or in part: (1) absolute exclusion for fraud, misrepresentation, deceit or suppression or concealment of fact; (2) employment related practices exclusion; (3) employer's liability; (4) expected or intended injury; (5) contractual liability; (6) professional services; and (7) all other policy exclusions;

g.    Notice of the claim was not timely;

h.    Notice of the suit was not timely;

i.    Achdut does not qualify as an insured as defined in the Umbrella Policy and required by the Insuring Agreement of EMC's Umbrella Policy; and

j.    All other policy provisions, exclusions and conditions.

53.    Because application of the pertinent portions, terms, provisions, exclusions, conditions, etc., under EMC's Umbrella Policy preclude coverage for Highline and Achdut in the underlying action, EMC owes no duty to defend or indemnify them for any judgment, consent or otherwise, that might be rendered against them, for some or all of Huff's allegations in the underlying action, for each and every reason stated above.

## **CLAIMS FOR RELIEF**

54.     Based upon the foregoing facts, allegations in the underlying pleadings, and the attached Policies, there presently exists a justiciable controversy as to whether coverage would exist as to the claims made by Huff against Highline and Achdut and/or whether the insuring agreements are triggered or whether coverage would be excluded by Alabama case law and the applicable language in the Policies and/or whether the Policies conditions have been met and/or whether there has been a forfeiture of coverage.

55.     EMC desires to perform and discharge any duties which it may owe to the parties involved in this incident, but is presently in doubt as to the nature and extent of its obligations, if any, with respect to the Policy in question.  Absent a declaration of its rights and obligations, EMC will be exposed to substantial and irreparable injury and uncertainty, all of which can be avoided by the declaration of its rights as requested herein.

56.     EMC respectfully requests that this Court assume jurisdiction over this cause and allow EMC to determine all coverage issues as may exist under all the terms and provisions of the Policy.  EMC prays that this Court will generally declare and define the following:

        a.      That this Honorable Court take jurisdiction of this case;

b.   That this Honorable Court order, adjudge and decree that this is a proper cause for an action of declaratory judgment and that there is a bona fide controversy between the parties as to their legal rights, status and liability;

c.   That process of this Honorable Court be issued to the Defendants and that they be ordered to respond to this Complaint for Declaratory Judgment within the time required by law, or in the event of their failure to do so, suffer a decree by default;

d.   That upon a final hearing of this case, this Honorable Court will declare that EMC does not owe a duty to defend or indemnify Highline and/or Achdut in the underlying action under the Policies issued to Highline; and

e.   EMC also requests such further and different relief as may be appropriate to accomplish justice and equity among the parties.

Done this the 21st day of March, 2017.

/s/ James A. Kee, Jr., ASB-4314-e68j
Cynthia A. Martin, ASB-2044-i49c
Attorneys for Plaintiff
Employers Mutual Casualty Company

OF COUNSEL:

KEE LAW FIRM, LLC
Post Office Box 43347
Birmingham, Alabama 35243
(205)968-9900 (phone)
(205)968-9909 (fax)


**REQUESTING SERVICE *BY CERTIFIED MAIL* TO BE SENT TO THE FOLLOWING DEFENDANTS AT:**

Jeff Huff
5133 Weatherford Drive
Birmingham, Alabama 35242

Highline Imports, Inc.
*By registered agent* Rami Achdut
329 24th Street South
Birmingham, Alabama 35233-2407

Rami Achdut
3499 Overton Road
Birmingham, Alabama 35223